Good morning, Your Honors. Mike Mayer for the petitioner. In this case, the government does not contend that intentional conduct is required for violation of Penal Code Section 246. They agree that it can be committed by recklessness. And this Court in Fernandez-Ruiz has held that for purposes of 18 U.S.C. Section 16 for crime of violence, aggravated felony, that recklessness is not good enough. It has to be intentional. Multi-espinosa said for purposes of 18 U.S.C. Section 16b, which we're concerned with in this case, that recklessness is not good enough. So this case should be really easy for decision, even though it may be counterintuitive. Now, the government's argument in this case really is that in the course of committing the offense, somebody may, a victim, may try to defend themself, which would then escalate into the perpetrator of the offense attacking the victim. But this argument was discussed in a Second Circuit case, I'm sorry, a Seventh Circuit case cited in the brief Jimenez-Gonzalez. And the Court said that unlike the prototypical example of a burglary that was discussed in Leocal, there's three distinctions in a case where there's recklessness. First, and this was a case involving discharge of a firearm in the Seventh Circuit, which they said does not fall within Section 16b. Again, it's Jimenez. Which case is that? Jimenez-Gonzalez v. Mukasey. And the site is 548 F. 3rd, 557. Yeah, we have the site. Thank you. Yes. Now, they said there's three distinctions. First of all, burglary, there's intentional conduct, purposeful conduct. Here, it's reckless conduct. Second, criminal recklessness, they say, does not necessarily create a risk that force may be used as a means to an end during the commission of the offense. In burglary, in order to commit the offense of stealing something, for example, in a house, the burglar may have to use violence against a victim in the house. Here, the offense is complete when the gun is fired, and that also is set forth in this decision. Now, the Ninth Circuit has said in another recent case, Prakash v. Holder, dealing with solicitation of a crime of violence, that force can be looked at during the commission of the offense, it's properly extended to the intended result of the solicitation. So if you solicit to do a crime of violence, then you can look at the intended result. But the Ninth Circuit and the government agrees with this, has said that for 246, there's no intent to cause harm. There's obviously a willful act to pull the trigger. That's intentional. But the recklessness is that it only has to be in the proximity of a dwelling or the proximity of a car. In this case, the gun was fired into the floor of an apartment building. So, Your Honor, it's unclear, but the complaint alleges that it was fired at a car. But I thought there was an apartment building. No. Well, it's difficult to determine because the abstract of judgment says an inhabited dwelling. But the complaint says a car. We don't have the minute order for the entry of plea. We do have a transcript of the sentencing hearing, but the sentencing hearing is not under Shepard really an admissible document because we need to find out what happened at the plea. Did he admit to the complaint or did he admit to a different complaint, an amended complaint? All we have is the complaint, an abstract of judgment, which has something different, and a transcript of sentencing hearing. But as you started to say, doesn't the question for us boil down to whether someone, whether recklessly or not, shooting at a car in the vicinity of a car or a house, is it likely, as the BIA found, that somebody is going to run out and start defending themselves and shoot so that you would then have a substantial risk of intentional use of force? Okay. And why isn't that? It's certainly, there seems to be a certain reasonableness about thinking that if you're going to shoot a gun in the vicinity of an occupied house, somebody could defend themselves. Yes, but that could be said of almost any number of cases. I mean, there could be people responding in a drunk driving case where somebody is killed by a drunk driver and the driver attempts to escape because he's just seen that somebody, that he's run over somebody and he's drunk. He could attempt to escape. People could try to apprehend him. But drunk driving, as we know from Leocal, is not within the purview of Section 16B. So you could say that about disturbing the peace. You could say that about any number of crimes. There would be no way to limit where 16B falls. Counsel, Judge Gould with a question for you. Yes. Now, this theory might not stand in light of Judge Baez, Ferdinand Ruiz's case, but let me just pose it to you from my perspective. Let's say we look at a whole bunch of common law authorities in various contexts that state the principle that a person can be held to have intended the natural and probable consequences of their conduct. That is, they can be held to have intended what was the natural consequence of what they did. And I think that principle's been applied in a lot of intentional tort type situations and others. So why doesn't that principle apply here so that if you shoot at an inhabited car or inhabited building where the natural or probable consequences, someone may get hurt, that you should be held to be intending that and treat it as if it were an intentional crime? Well, you know, you don't write on a blank slate, unfortunately. The Ninth Circuit in U.S. v. Coronado, which I raised in the 28J letter, says that 246.3, which is very similar to 246, does not apply to the residual clause for the sentencing guideline for the serious risk of injury because of Fernandez-Ruiz and Begay. I guess because of Begay, which says that a crime has to be purposeful and aggressive and violent. And clearly 246 is aggressive and violent, but it's not purposeful in the sense that there's no intent to cause harm in Penal Code Section 246. Now, I don't know how this court would distinguish this case from United States v. Coronado. I don't know how this court would do that. Now, you could say in United States v. Coronado, when the person pulled the trigger, because it was another 246 case, that it's intentional. And so he should intend the consequence, he should be held responsible for the natural and probable consequences of his act. But that's not what the case holds. And I think that the wording of Section 16B requires some kind of deliberate act of employment of force where you intend to commit a crime that you know that you're going to use force against the victim. Now, discharge of a firearm doesn't even require a victim. It could be an unoccupied house. It has to be a dwelling unit, but it could be unoccupied. It could be your own dwelling unit. It could be your own car. And or it could be meant to scare somebody, where you have been reckless as to the probability that it may actually hit the building or the car. So I think there's a number of reasons. And I think that this would, your, if you call it a proposal, would be, there would be no limit as to what crimes you could apply that to, which would then come under the purview of 16B. Thank you, counsel. Your time has expired. We'll hear from the government. Good morning, Your Honor. Emanuel Collap, the respondent in this case. The main problem with much of Petitioner's argument here is that many of his authorities simply have no application here. Fernandez-Ruiz is a 16A case, which looks at the elements of the predicate offense. 16B is entirely different and disjunctive from that test. We do have the Tron case out of the Third Circuit. Why isn't that instructional here? Your Honor, it's already called Tron. I don't know if that's a 246B case. I'm sorry, 16B case. 16B case. It is? All right. My reading of most of those cases that were cited is that even though the courts purport to look at 16B, they end up applying an elements sort of test under 16B. They look at the elements of the predicate offense. Here, CPC 246, intentionally shooting a firearm at or near a dwelling. If that case actually looks, as the Supreme Court instructed in Leocal, at the risk that Judge Ikuda referenced, that is, the risk that as a result of committing the predicate offense, there may be a reaction from someone else in a confrontation which might require the use of intentional force, if that court did that, then I think that's a valid but nonbinding precedent. What happens in most of these cases, Your Honor, is that the courts do not look at the separate risk assessment. They look at the elements of the offense. And that's a test under 16A, not 16B. The template, as the Supreme Court said in Leocal, is burglary, which I'm sure you're familiar with. And the crime at issue here, intentionally shooting a weapon, which is an intentional act, at or near an occupied vehicle or dwelling, fits that template. Because when you commit a violent act like that, you've got a perpetrator who's acted intentionally. He's got a firearm. People who are at or near his range of fire can be expected to take, to react in some way, either to confront him, to defend themselves, or to try to seek his apprehension. And that is where the risk of intentional force comes into play. It doesn't come into play in the actual commission of the offense. I'm sorry. So I'm looking at sort of simplistically to say, is Section 246 offense more like a DUI, like the Supreme Court discussed in Leocal, or is it more like burglary? That's exactly our argument, Your Honor. And so here's my question. Now, in my old neighborhood, on New Year's Eve, people would take out their guns and in celebration just shoot it up in the air, and almost all the time somebody would get hurt. But it was not really any more intentionally violent than getting very drunk and getting into a car where the chances of hurting someone are probably equally as high. Why isn't this, when we look at the least conduct that's restricted, as we must under Taylor, why isn't it more like a DUI than like a burglary? Your Honor, I will answer your question, but let me just point out quickly that in Jane's Supreme Court case, you don't look at every single possible application in this context. What you look at is the offense in the normal course, the typical case. That's the Jane's case, which this Court adopted in Terrell and Cruz afterwards, and that's what's wrong with Malta-Spinoza. In your hypothetical, I think that hypothetical might be more akin to DUI. That's a separate offense under California law. I believe that's 246.3, a negligent discharge of a weapon, a reckless discharge of a weapon. I could be wrong about that. But the 246 does not require the intention to hurt anyone or to cause injury. It does require an intentional discharge of a firearm at or near an occupied vehicle or vehicle. And so why did my hypothetical not fit that? I mean, perhaps it could be charged under both statutes, but why doesn't my hypothetical fit exactly that? Well, it might fit the template, Your Honor. I think when you mentioned this is not that complicated an issue as the Supreme Court couched it in Leopold. They said it's a common-sense inquiry. Look at the nature of the offense we're talking about. Does the nature of that offense present the risk that the perpetrator will use intentional force against a third party or a person or property? And because the burglary template fits here because it's not any injury caused or force caused by the act of shooting. It's the aftermath of that. So what's your response to the counsel that there's really no stopping point because in a DUI offense, people angered by the attempt to flee the scene will come out and use intentional force? Well, of course there's a stopping point, Your Honor. That's a false argument. I mean, Leocal and many other courts have already weighed in that when you look at the nature of a DUI offense, that's not a just using your common sense and looking at the nature of that offense, that's not the kind of offense that in the court's experience is going to lead to a confrontation where in that case the drunk driver is going to employ intentional force against somebody after killing or injuring somebody with a vehicle. Well, what's the evidence in this context that the sort of joy discharge of firearms or maybe it's hunting or whatever it is will trigger this escalating violence? Is there a survey? I know the Supreme Court has relied on some surveys and evidence in making this. Well, no, Your Honor. As this Court said in U.S. v. Specker, you arrive at your conclusion through the confluence of precedent and common sense. So there was no analysis done. I mean, I would hasten to add that this is not a shooting a gun in the air on a holiday situation. It's an intentional discharge of a firearm at or near an occupied dwelling or vehicle. Counsel, Judge Gould, if I could ask you a question, please. Certainly, Your Honor. I'm sort of mystified as to why the government did not alternatively pursue a modified categorical approach in this case. Because under Taylor, we have to look at this statute, as I understand it, and not say what normally happens, what do we think is likely to happen usually, but what's the least offensive or intrusive conduct that could violate it. So it seems the government might have made it easy to assess this case if it had approached the modified categorical. So could you address that for me, please? Yes, sir. I can't tell you why that wasn't done. I don't know what other evidence there might be that was available. But I have to stress, I can't leave this podium without making sure the Court is aware that shortly after Malta-Espinoza, which was found not to be a crime of violence because the Court found one hypothetical instance where it's a stalking statute, and it was issued in that case, and the Court said because stalking could be conducted long distance by phone or mail, there's no ‑‑ that's a possible way to violate it. There's no risk of use of force because there's no proximity. A month later, in the James v. U.S. case, the Supreme Court clearly said when you're applying the categorical Taylor approach in this context, you don't look at every possible scenario and eliminate it based on something that might not violate, might not create use of force. What you do instead is look at the ordinary case. In other words, how is this offense typically carried out? And this Court in James and Terrell subsequently adopted that approach. So Malta-Espinoza, one month after it was issued, is no longer valid in that respect. You don't apply the categorical approach in this situation by looking at every possible scenario and finding one that does not present a risk of the use of intentional force. What you do is look at the nature of the offense in the ordinary case. And that's very clear in James, Terrell, and Cruz. Okay, thank you. Thank you. Anything further, Counsel? I'm sorry, go ahead. Anything further? Yes, I just want to point out, Your Honor, again, that I don't think this issue is as complicated as it's made out to be. The Supreme Court said in the OCAL it's a common sense approach. You look at the nature of the offense, and many of the authorities that are cited in the respective briefs or are cited in the decisions themselves, I believe, go astray or don't fit here because they either apply the U.S. Sentencing Guidelines definition of violence, the ACCA definition. They have no application here, nor does 16A, which looks at the elements of the offense. The only issue is 16B here. Thank you, Your Honor. I appreciate your time. Thank you, Counsel. The case just argued will be submitted for decision, and you used your time, Counsel. I'm sorry. In fact, I gave you an extra minute. I'm sorry. All right. Thank you very much. Oh, you're very welcome.
judges: O'scannlain, Gould, Ikuta